IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

PHATIFFINIA ROBINSON                                                        PLAINTIFF

Vs.                                  Case No. 4:24-cv-852-DPM

JAMES A. ROGERS EXCAVATING, INC.                                           DEFENDANT

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Comes Defendant, James A. Rogers Excavating, Inc. ("JARE"), by and through its attorneys, Barber Law Firm PLLC, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1(a), for its Statement of Undisputed Material Facts, and states:

1.     Plaintiff Phatiffinia Robinson began working as a dump truck driver for JARE sometime in May 2023, at an agreed upon rate of $18.50 per hour. [Doc. 1, ⁋ 17, 22].

2.     At the time of her hiring, Plaintiff possessed a valid CDL license but had less experience as a professional driver, and Plaintiff's CDL restricted her to only driving automatic transmission vehicles. (Exhibit 1, Deposition Testimony of Plaintiff, p. 29).

3.     Plaintiff's job responsibilities consisted of picking up materials from various quarries and hauling them back to various job sites. (Exhibit 1, p. 33).

4.     Plaintiff never drove anything other than a dump truck during her employment with JARE. (Exhibit 1, p. 91).

1

5.      The majority of JARE's equipment contains manual transmissions, meaning Plaintiff was not qualified to drive it. However, JARE did have an automatic transmission dump truck available for Plaintiff's use. (Exhibit 2, Declaration of Chris Meyer, ₱ 4).

6.      Driver pay is adjusted based on performance, tenure, and responsibilities. For example, employees who haul materials as well as job site equipment or more hazardous vehicles like water tanker trucks often have higher rates of pay. (Exhibit 2, ₱ 10).

7.      Hauling equipment as opposed to just materials involves different and increased risks. Drivers who operate tanker trucks require an elevated skill and experience level due to the dangers involved with load shift, which is inherent when hauling fluid, and those responsibilities are generally given to more experienced drivers. (Exhibit 2, ₱ 6).

8.      At the time of Ms. Robinson's employment, JARE had two drivers assigned to the low-boy tractor trailers used to haul heavy equipment.  One was Adam Parker, whose title was "Truck Boss," and the other was Quindon Cox.  The two low-boy rigs haul more weight, and each rig uses a manual transmission. (Exhibit 2, ₱ 7).

9.      During the time frame of Robinson's employment, JARE employed three other female dump truck drivers and four male dump truck drivers. (Exhibit 1, p.  20, Exhibit 2, ₱ 11).

10.     Quindon Cox, a black male, made $21.00 per hour while Plaintiff was employed at JARE.  However, Mr. Cox was one of two equipment haulers.  Mr. Cox was qualified to operate trucks equipped with manual transmissions. (Exhibit 1, p. 93, Exhibit 2, ₱ 12).

11.     The other equipment hauler, Adam Parker, made $22.50 per hour at the time.  Adam was more tenured and also served as the truck boss.  Mr. Parker was qualified to operate trucks equipped with manual transmissions. (Exhibit 2, ₱ 12).

12.    Vic Norman, a black male, was re-hired by JARE for his second stint at the company during Plaintiff's tenure with JARE. His primary job was to operate the water truck, and his hourly rate was $19.25.  Mr. Norman could operate a dump truck when not operating the water truck.  Mr. Norman was qualified to operate trucks equipped with manual transmissions.  (Exhibit 1, p. 86; Exhibit 2, p. 13).

13.    Brandon Shelton, a male who started with JARE in July 2022, maintained a constant rate of pay of $18.25 an hour—25 cents lower than Plaintiff was paid—until his separation in July 2023. (Exhibit 2, ⁋ 10).

14.    Adam Parker was Ms. Robinson's direct supervisor. He was the first line of supervision over the drivers. (Exhibit 1, p. 41; Exhibit 2, ⁋ 8).

15.    Mr. David Babbitt was the superintendent of the work sites; Mr. Babbitt would interact with drivers at the work sites and may direct where the drivers are to drop their loads.  Mr. Babbitt was also responsible for the workflow at the job sites, and drivers are expected to follow his instructions while on the job sites.  (Exhibit 1, p. 43; Exhibit 2, ⁋ 8).

16.    Sometime in May or early June, Plaintiff claims that in a conversation about yellow safety-colored leggings, Adam Parker stated, "We'll see your ass from a mile away." [Doc. 1, ⁋ 27]; (Exhibit 1, p. 52).

17.    Plaintiff testified that after this comment was made, she simply walked off and got into her truck to start her duties for the day. (Exhibit 1, pp. 52-53).

18.    In early July, Plaintiff claims that she and Adam Parker were discussing an older, "grumpy" employee who worked as a loader.  Plaintiff described the conversation in her deposition: "Adam said, yes, you show him your boobs, he'll be fine.  He said, if I show him mine, he'll probably kick my ass, but if you show him yours, he'll be nice to you." (Exhibit 1, p. 54).

19.    Plaintiff testified that she once again walked away from the conversation after that comment was made. (Exhibit 1, p. 56).

20.    On May 25, 2023, just days after Plaintiff started with JARE, she hit a gate, causing minor damage to the dump truck that she was driving and gate. (Exhibit 1, p. 108; Exhibit 2, ⁋ 15)

21.    Plaintiff failed to immediately report this incident, despite clear company policy directing her to do so. (Exhibit 2, ⁋ 15).

22.    Plaintiff was counseled by management regarding her failure to follow company policy. (Exhibit 1, p. 108; Exhibit 2, ⁋ 15).

23.    On May 30, 2026, JARE management received three separate phone calls reporting that Plaintiff was driving too fast through a job site and not paying attention to site operators. (Exhibit 2, ⁋ 16)

24.    Her actions on May 30, 2026, resulted in incomplete loads and contributed to a higher concentration of unwanted dust on the worksite, which presents a significant issue for other workers on open-station equipment and on the ground. (Exhibit 2, ⁋ 16).

25.    On June 12, 2023, JARE management was once again contacted by a pit operator regarding Plaintiff's excessive speed on a job site and her bad attitude in response to instructions to slow down. (Exhibit 2, ⁋ 17).

26.    On June 12, 2023, Plaintiff requested to have a conversation with JARE owner, Chris Meyer. In a telephone conversation that evening, Plaintiff complained of a "rude" interaction with JARE superintendent, David Babbitt. Plaintiff stated that Babbitt had yelled at her to roll her window down on one occasion. (Exhibit 1, p. 43; Exhibit 2, ⁋ 18).

27.     Meyer told Plaintiff that her complaint would be addressed with Mr. Babbitt, and Meyer did so. Mr. Babbitt was counseled to communicate professionally with employees even if he was frustrated with the employee's mistakes. (Exhibit 1, p. 60; Exhibit 2, ¶ 19).

28.     By mid-July 2023, Meyer observed that the workload was thinning and that JARE lacked replacement contracts. (Exhibit 2, ¶ 21).

29.     In response, Meyer made the decision to downsize his workforce to optimize efficiency within the company. Mr. Meyer had to assess the available drivers to determine who should be laid off. (Exhibit 2, ¶ 21).

30.     Because Plaintiff was one of the newest hires with less experience, limited qualifications, and had generated several complaints within the short span of her employment, Meyer made the decision to terminate Plaintiff's employment, effective July 21, 2023. (Exhibit 2, ¶ 22).

31.     Vic Norman had higher responsibility of driving the water tanker truck, which is a critical function in the company, and which is more hazardous than operating a dump truck. Mr. Norman, in addition to being qualified to operate the tanker truck, was qualified to operate both models of dump trucks (automatic and manual transmissions). (Exhibit 1, p. 86; Exhibit 2, ¶ 24).

32.     These distinctions warranted Mr. Norman's slightly higher pay as well as justifying the decision to keep him over Ms. Robinson when deciding who to lay off. (Exhibit 2, ¶ 24).

33.     Plaintiff testified that she saw Mr. Norman operating the dump truck that was assigned to her a "week or two" after her termination but that he had only ever driven the water truck prior to her termination. (Exhibit 1, p. 86, 89).

34.    Likewise, Quindon Cox was an experienced driver who often hauled equipment as well. In fact, only Mr. Cox and Mr. Parker were authorized to haul the heavy equipment at the time, which is arguably the most hazardous driving job within the company. (Exhibit 2, ¶ 25).

35.    Plaintiff was laid off due to her short tenure with the company, her lackluster job performance, more limited responsibilities within the company as well as her more limited experience and qualifications overall, which limited her usefulness to the company. (Exhibit 1, p. 67; Exhibit 2, ¶ 26).

Respectfully submitted,

James D. Robertson   (AR BIN 95181)
BARBER LAW FIRM, PLLC
*Attorneys for Defendant*
One Allied Drive, Suite 1600
Little Rock, AR  72202
Tel: (501) 372-6175 | Fax: (888) 412-3288
Email: jrobertson@barberlawfirm.com