IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**PHATIFFINIA ROBINSON**                                          **PLAINTIFF**

vs.                                    No. 4:24-CV-852-DPM

**JAMES A. ROGERS EXCAVATING, INC.**                    **DEFENDANT**

## RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.       INTRODUCTION

Plaintiff has presented evidence to rebut every issue that Defendant raises in its Motion for Summary Judgment. The record evidence is fully sufficient to demonstrate Defendant's discriminatory intent in firing Plaintiff and that the firing was direct retaliation for raising concerns regarding her sexual harassment. The record likewise supports Plaintiff's hostile work environment claim. Moreover, Plaintiff has raised evidence showing that she was paid less than her male counterparts—and Defendant has admitted under Rule 36 both that Plaintiff was paid less than at least one male truck driver and that she performed substantially equal work to at least one male truck driver. Accordingly, Defendant's request for summary judgment must be denied.

### II.      STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 applies in employment-discrimination cases just as it applies in any other case, and the Court views genuinely disputed facts in the light most favorable to the nonmoving

party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc).

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III.   FACTUAL BACKGROUND

Defendant hired Plaintiff to work as a dump truck driver in May of 2023. Decl. of Chris Meyer ("Decl. Meyer") ¶ 3, ECF No. 13-2. As a dump truck driver, Plaintiff's duties were to collect materials from quarries and haul those materials to Defendant's various job sites. Dep. of Phatiffinia Robinson ("Dep. Robinson") 33:2–24, ECF No. 13-1. Prior to her employment, Plaintiff had obtained a Class A CDL, which qualified her to drive automatic tractor-trailers, including Defendant's dump trucks. Dep. Robinson 22:12–20; 29:17–30:16.

At the time of Plaintiff's employment, Defendant employed eight truck drivers. Dep. Robinson 70:18–71:2. *See also* Decl. Meyer ¶ 11. Four of the drivers were men, four were women, four were white, and four were black. *Id*. Plaintiff was the only black woman. Dep. Robinson 79:18–81:5.

Within the first weeks of her employment, Plaintiff began receiving rude and sexually inappropriate comments from her co-workers. Defendant's Superintendent, David Babbitt, cursed at Plaintiff, yelled at her, and accused her of not listening when she did not roll her truck window down to the degree he believed was appropriate. Dep.

Robinson 43:3–44:12; 61:2–15. Moreover, Mr. Babbitt and another white, female driver would regularly discuss Plaintiff out-of-earshot, but make it known whom they were discussing via pointed looks and smirks. Dep. Robinson 47:18–24. Mr. Babbitt was nice and respectful to the white, female truck drivers, rarely yelling at them the way he yelled at Plaintiff. Dep. Robinson 63:3–64:3.

Plaintiff complained to Chris Meyer regarding Mr. Babbitt's behavior and was given assurances that it would be addressed. Dep. Robinson 59:9–60:23. But Mr. Babbitt's behavior did not change and Plaintiff, along with the other truck drivers, received pointed instructions regarding how they were to roll their windows down when on a job site, the exact issue that Mr. Babbitt had angrily cursed at Plaintiff about. Dep. Robinson 61:2–11.

In the midst of experiencing this rudeness, Defendant's Truck Boss, Adam Parker, made several sexually inappropriate comments to Plaintiff. During a discussion about the purchase of bright, safety-colored leggings, Mr. Parker told Plaintiff that he would "see [Plaintiff's] ass from a mile away" if she wore them. Dep. Robinson 51:19–52:20. Later, during a discussion about a "grumpy" loader who had also been giving Plaintiff difficulties, Mr. Parker suggested that Plaintiff reveal her breasts to him and he would likely be nicer. Dep. Robinson 53:17–54:9. These comments occurred within a week or two of each other. Dep. Robinson 55:5–56:4, 65:15–18.

Directly following Plaintiff's complaint regarding Mr. Babbitt, the subtle aggression she had experienced with Mr. Babbitt and the other female drivers increased and they began to "nitpick" her work and cause minor inconveniences while snickering at Plaintiff's response. Dep. Robinson 84:4–85:9. At one point, early in her employment, Plaintiff entered the yard gate too closely and scraped a tarp handle on her truck against the gate.

Dep. Robinson 108:10–109:14. Plaintiff immediately reported the incident to Mr. Parker, who assessed the minor damage and said the truck was fine. *Id*. In fact, the only damage was a scrape along the metal of the tarp handle; no functionality was lost in the incident. *Id*. No discipline followed this incident. Dep. Robinson 108:21–24. In fact, Plaintiff did not receive any formal chastisements or warnings during her employment. Dep. Robinson 108:21–24; Def.'s Resps. to Pl.'s First Set of Reqs. for Admis. ("RFA") No. 12 (admitting "there was no formal write-up"), attached as Ex. 2.

Just before Plaintiff was up for her 90-day review and potential pay raise, Plaintiff was informed that she needed to leave a job site to report to the office, where she was terminated. Dep. Robinson 66:21–67:25, 115:3–5. While at the job site, Mr. Babbitt told a co-worker within Plaintiff's hearing to tell Plaintiff "to take her ass back to the yard" because "Adam is going to handle her." Dep. Robinson 44:17–20. When Plaintiff got back to the office, Mr. Parker informed Plaintiff that she was terminated because they were cutting drivers and she was the newest hire. Dep. Robinson 67:5–25. Plaintiff was not, in fact, the newest hire. Both Vic Norman, who had previously worked for Defendant, and Quindon Cox were hired after Plaintiff. Dep. Robinson 67:17–21. Mr. Norman was rehired on July 19, 2023—two days before Plaintiff was fired, and Defendant assigned Mr. Norman to drive Plaintiff's truck after she was fired. Def.'s Resp. to Pl.'s Interrog. No. 9, attached as Ex. 1; Dep. Robinson 86:1–17, 88:1–14; Dep. Exs. 6–7 (photographs of Mr. Norman driving Plaintiff's truck), attached as Ex. 5. Defendant's driver roster had already shrunk by one before Plaintiff was terminated: Brandon Shelton separated from the company on July 11, 2023—ten days before Defendant claims it needed to "downsize" by terminating Plaintiff. Ex. 1, Interrog. No. 9. Thus, in the ten days surrounding its purported

reduction in force, one driver separated, Defendant rehired another, and Plaintiff was the only driver terminated in the purported downsizing.

Plaintiff earned $18.50 per hour for the duration of her employment. Dep. Robinson 39:1–16. Mr. Cox, who was hired after Plaintiff and performed the same duties as Plaintiff during Plaintiff's employment, was paid $21.00 per hour. Dep. Robinson 90:22–91:9. Ex. 1, Interrog. No. 9 (Mr. Cox hired May 30, 2023, at $21.00 per hour); RFA Nos. 1–3 (admitting that Plaintiff was "paid less per hour than at least one male employee who held the position of truck driver during her employment"). Defendant's interrogatory answers also identify Othello Page—not Mr. Cox—as a "low boy driver," hired February 15, 2023, at just $19.00 per hour, and show that Bryan Morris, another male driver hired four months before Plaintiff, was paid $19.25 per hour. Ex. 1, Interrog. No. 9. While Mr. Cox was ostensibly qualified to haul equipment, he never did so during Plaintiff's employment, and in fact quit working for Defendant when Defendant made him haul equipment without giving him a commensurate pay raise. Dep. Robinson 91:16–92:5, 114:23–115:5; *see also* Dep. Ex. 9.

## IV.   ARGUMENT

Defendant's Motion for Summary Judgment must fail as a matter of law. Defendant argues that it terminated Plaintiff's employment for job performance-related reasons, but Plaintiff has produced evidence that contradicts this claim and which supports a jury verdict in her favor. Accordingly, Defendant's Motion must be denied.

**A.      The facts in the record are sufficient to support Plaintiff's claims of discrimination.**

Plaintiff's evidence is sufficient to raise an inference that she was fired for discriminatory reasons, and likewise that Defendant's stated reasons for her termination are mere pretext.

1.      Legal Standard: Title VII Discrimination

Title VII prohibits employment discrimination on the basis of sex. 42 U.S.C. § 2000e–2(a)(1). In order for a Title VII discrimination claim to survive summary judgment, the employee may either 1) provide direct evidence of discrimination, or 2) create an inference of discrimination under the *McDonnell Douglas* burden-shifting framework. *Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 767 (8th Cir. 2014) (citing *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 878 (8th Cir. 2010); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Direct evidence of discrimination is defined as "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.* (quoting *Elam*, 601 F.3d at 878). To create an inference of discriminatory intent, an employee must show that: "(1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Id.* (quoting *Elam*, 601 F.3d at 878–79).

Further, at the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's

adverse employment action. *Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004). If so, the presence of additional legitimate motives <u>will not</u> entitle the defendant to summary judgment. *Id*. (emphasis added). Therefore, evidence of additional motives, and the question whether the presence of mixed motives defeats all or some part of plaintiff's claim, are trial issues, not summary judgment issues. *Id*.

2. <u>Plaintiff has produced evidence sufficient to give rise to an inference of discrimination.</u>

Whether Plaintiff is a member of a protected class who was qualified to perform her job for Defendant is not at issue, as both parties agree that both Plaintiff's race and gender are protected by Title VII and that her CDL qualified her to drive the dump truck to which she was assigned. Defendant claims, however, that Plaintiff cannot show sufficient facts to give rise to an inference of discrimination. Plaintiff's deposition testimony coupled with the holes in Defendant's proffered evidence are sufficient to give rise to an inference that Plaintiff was terminated because of her sex—an inference reinforced by evidence that Plaintiff, the only black woman on Defendant's driving staff, was singled out for treatment her coworkers escaped.

As a threshold matter, Defendant's footnote assertion that "race-based discrimination was not alleged at the EEOC" is incorrect. Plaintiff's verified Charge of Discrimination expressly stated: "I believe I was harassed, sexually harassed, and discharged due to my sex, female, and harassed and discharged due to my race, African American, and discharged in retaliation for my complaints in violation of Title VII of the Civil Rights Act of 1964, as amended." EEOC Charge No. 493-2023-02341, attached as Ex. 4. The charge further stated that Plaintiff's June 12, 2023 complaint to Defendant's

owner was "regarding sex and race discrimination." Id. Administrative charges are construed liberally, Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006), and this charge alleged race in so many words. To be clear, Plaintiff's Complaint pleads claims of sex discrimination and retaliation under Title VII and unequal pay under the EPA, [Doc. 1, ¶¶ 29–47], and Plaintiff does not ask the Court to adjudicate a freestanding race claim. But no rule of preservation requires the Court to ignore the racial dimension of the evidence: proof that Plaintiff—the only black woman among Defendant's drivers—was singled out for treatment that her coworkers, including the white female drivers, escaped is competent circumstantial evidence that Defendant's stated reasons were pretextual, and that evidence is properly considered on the claims Plaintiff pleaded.

Defendant offers a host of reasons for its termination of Plaintiff's employment, many of which conflict with each other and with the objective actions of Defendant at the time of termination. Defendant claims it fired Plaintiff when it decided to "downsize" due to reduced workload, but Plaintiff was the *only* member of Defendant's team who was fired, and she was promptly replaced: Defendant rehired Vic Norman on July 19, 2023—two days before it fired Plaintiff—and moved Mr. Norman into Plaintiff's truck within a week or two of her termination. Ex. 1, Interrog. No. 9; Dep. Robinson 86:1–17, 88:1–14; Dep. Exs. 6–7. Defendant claims that Plaintiff's position as one of the newest hires was a factor in its decision, but Plaintiff was not the newest hire; Quindon Cox was hired a few weeks after Plaintiff. *See* Ex. 1, Interrog. No. 9 (Mr. Cox hired May 30, 2023). Defendant's claim that Mr. Cox was retained because of his cross-qualification as an equipment hauler fails because Mr. Cox was not asked to haul equipment at all until well after Plaintiff's termination. Dep. Robinson 91:7–9 (Mr. Cox "never pulled equipment" during Plaintiff's

employment); Dep. Robinson 113:8–115:5 & Dep. Ex. 9, attached as Ex. 6. Defendant states that it considered the "several complaints" that Plaintiff had "generated" during her employment, but never actually addressed these complaints with Plaintiff, which raises the inference that they were not actually issues until Defendant decided to terminate Plaintiff due to her status as a black woman and began looking for a nondiscriminatory reason to do so. Dep. Robinson 108:23–24 (stating that Plaintiff was not written up or chastised).

Plaintiff's evidence directly disputes Defendant's assertion that she damaged a truck without reporting it. When Plaintiff hit the gate, she immediately informed Mr. Parker, who looked at the truck with her and noted the only damage was a scraped tarp handle. Dep. Robinson 108:19–109:2. The other "complaints" raised against Plaintiff are likewise questionable. According to Plaintiff, many of the other drivers caused accidents or damaged their trucks to a greater extent than the minimal damage she incurred by hitting the gate. Dep. Robinson 80:15–81:5. Likewise, all of Defendant's drivers were accused of kicking up dust at worksites, but Plaintiff was the only one to be terminated because of it. Dep. Robinson 54:21–55:2.

Certainly every one of these stated reasons for Plaintiff's termination can be explained away in a nondiscriminatory manner, but Plaintiff urges the Court not to miss the forest for the trees. Plaintiff was the only black female on Defendant's payroll; she was also the only one for whom kicking up dust was a problem, despite it being a company-wide issue, and the only one who was accused of not reporting an accident when she actually did report it. This, taken together with the fact that Plaintiff was not

actually Defendant's newest hire, is sufficient to raise an inference of Defendant's discriminatory intent.

Nor does labeling the termination a "downsizing" insulate it from scrutiny. The record shows that Defendant's purported reduction in force consisted of firing exactly one driver—Plaintiff—two days after rehiring another driver and ten days after a third driver had already separated from the company. Ex. 1, Interrog. No. 9. A reasonable jury could find that no genuine reduction in force occurred at all: headcount was not meaningfully reduced, and Plaintiff was replaced in her own truck by the very man rehired two days before her termination. Dep. Robinson 86:1–17; Dep. Exs. 6–7. The Eighth Circuit reversed summary judgment on similar facts in Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1115–16, 1121–22 (8th Cir. 2006), abrogated in part by Torgerson v. City of Rochester, 643 F.3d 1031, 1043, 1058 (8th Cir. 2011) (en banc), where the employer invoked a business downturn and the plaintiff's junior status to justify a termination that followed shortly after the plaintiff's complaint, and the plaintiff was the only employee in her region terminated in the purported downsizing.

3.    <u>Plaintiff has shown that Defendant's reasons for firing Plaintiff are pretextual.</u>

Once Plaintiff has raised an inference of discriminatory intent, the burden shifts to Defendant to provide a nondiscriminatory motive for her termination. As stated above, Defendant has provided many reasons for her termination, all of which are ostensibly nondiscriminatory. Thus, the burden now shifts back to Plaintiff to show that these reasons are mere pretext.

"Evidence of pretext, normally considered at step three of the *McDonnell Douglas* analysis, can satisfy the inference-of-discrimination element of the *prima facie* case." *Covey v. Natl. Park College*, No. 6:20-CV-06141, 2022 WL 1750627, at *5 (W.D. Ark. May 31, 2022) (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Id.* (quoting Lake, 596 F.3d at 874). "A plaintiff can demonstrate a material question of fact as to pretext by either showing the proffered explanation has no basis in fact or by persuading the Court that it is more likely that a prohibited reason motivated the employer." *Id*. (citing *Gibson v. American Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012)).

As stated above, Plaintiff was treated differently than her similarly-situated employees. While all of Defendant's drivers received complaints regarding kicking up dust at worksites, only Plaintiff was terminated. Dep. Robinson 54:21–55:2. Defendant says that the gate incident—and Plaintiff's supposed failure to report it—factored into its decision. But Plaintiff immediately reported the scrape to Mr. Parker, who inspected the truck and signed off on the minimal damage, and other drivers were involved in accidents that caused significantly more damage and were not fired. Dep. Robinson 80:15–81:5. Notably, Defendant never told Plaintiff about these infractions or addressed the issues with her at all. Dep. Robinson 108:23–24.

Defendant's explanation has also refused to hold still. On the day of termination, Mr. Parker told Plaintiff that Defendant was "cutting drivers short" and was "terminating the newest driver." Dep. Robinson 67:5–25. That was false: Defendant's own

interrogatory answers show that Mr. Cox was hired eleven days after Plaintiff and that Mr. Norman was rehired two days before she was fired. Ex. 1, Interrog. No. 9. To the EEOC, Defendant represented that "Ms. Robinson was the newest employee who drove only a dump truck" and that retaining the rehired driver was justified in part because "driving a tanker required extra certifications that Ms. Robinson did not have." Position Statement of JARE at 1–2, attached as Ex. 3. The "extra certifications" justification appears nowhere in Mr. Meyer's summary-judgment declaration. See Decl. Meyer ¶¶ 13, 24. Now, at summary judgment, "newest employee" has become "one of the newest hires," and Defendant has appended a list of performance complaints that it admits were never documented in any write-up. RFA No. 12; Dep. Robinson 108:21–24. Mr. Meyer's own declaration concedes that "[t]here were no other issues with Ms. Robinson" in the weeks between her complaint and her termination. Decl. Meyer ¶ 21. "Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext." Kobrin v. University of Minnesota, 34 F.3d 698, 703 (8th Cir. 1994). And a factfinder's "disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)).

Likewise, Defendant's supervisors treated Plaintiff differently than other drivers. Mr. Babbitt was inordinately rude to Plaintiff but was solicitous and kind to Defendant's white female drivers. Dep. Robinson 43:3–44:12, 47:18–24, 61:2–15, 63:3–64:3. Plaintiff twice experienced uncomfortable, sexually charged comments from Mr. Parker; the

coworker who heard the second comment refused to treat it as a joke. Dep. Robinson 51:19–52:20, 53:17–54:9, 56:5–22.

Defendant's expanding list of reasons for Plaintiff's termination is itself evidence of pretext. Defendant's stated reasons for firing Plaintiff at the time of termination are that she was the least qualified, newest hire. But now Defendant adds on that she had generated complaints and had given "attitude" to co-workers. Most importantly, Defendant states that Plaintiff's damaging of her truck without reporting it factored into its decision, but Plaintiff specifically testified that she reported the damage immediately to Mr. Parker. This direct rebuttal of Defendant's evidence calls the remaining evidence into question. Defendant's shifting explanation of why it fired Plaintiff demonstrates that all stated reasons are mere pretext. Defendant decided to fire Plaintiff, their only black female employee, and then began looking for every nondiscriminatory reason to fire her that could potentially stick.

**B.     The facts in the record are sufficient to support Plaintiff's hostile work environment claim.**

Defendant separately seeks summary judgment on Plaintiff's hostile work environment claim. [Doc. 1, ¶¶ 24–27, 33–34.] To defeat that request, Plaintiff must present evidence that she belongs to a protected group, that she was subjected to unwelcome harassment, that a causal nexus exists between the harassment and her protected status, that the harassment affected a term, condition, or privilege of her employment, and that her employer knew of the harassment and failed to remedy it. Clobes v. 3M Co., 106 F.4th 803, 807 (8th Cir. 2024). The final element presents no obstacle: Plaintiff told the company's owner on June 12 that Mr. Parker had made a comment she found offensive, Mr. Meyer said "we will talk about it" but never did, and Mr.

Parker delivered the second, more explicit comment in the weeks that followed. Dep. Robinson 64:19–65:9, 55:19–23, 66:6–12. And in any event, that element does not apply where the alleged harasser is a supervisor. See Yelder v. Hegseth, 151 F.4th 943, 954 n.14 (8th Cir. 2025). Whether an environment is hostile is judged by the totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with work performance. Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 759 (8th Cir. 2004).

Defendant reduces Plaintiff's claim to two "stray remarks." The record is not so tidy. The two explicitly sexual comments—that Plaintiff's "ass" could be seen "from a mile away" in safety-colored leggings, and that Plaintiff should show her breasts to a hostile coworker to obtain civil treatment—came not from a passing coworker but from Adam Parker, the "Truck Boss" who assigned Plaintiff her work every day and who ultimately carried out her termination. Dep. Robinson 41:1–9, 51:9–54:9, 67:5–25. The second comment was itself Mr. Parker's response to Plaintiff reporting mistreatment by another worker on the site. Dep. Robinson 53:17–54:9. Those comments did not occur in a vacuum: the site superintendent, Mr. Babbitt, cursed and yelled at Plaintiff, belittled her, and treated her more harshly than the white female drivers, Dep. Robinson 43:3–44:12, 63:3–64:16; coworkers "nitpicked" Plaintiff and snickered at her after her complaint to the owner, Dep. Robinson 84:4–85:20; and on Plaintiff's final day Mr. Babbitt announced within her hearing that she should "take her ass back to the yard" because "Adam is going to handle her," Dep. Robinson 44:17–46:12—which Mr. Parker did, by firing her. Dep. Robinson 67:5–25.

Harassment need not be both severe and pervasive—either suffices. Plaintiff does not minimize the standard: it is a demanding one. But Yelder, the authority on which Defendant principally relies, illustrates the difference between conduct that fails it and this record. In Yelder, the plaintiff's claim rested on a supervisor ripping up his vacation-leave form, demanding doctor's notes for sick days, assigning him undesirable weekend and night shifts, calling him "lazy" and "too slow" and telling him to get a job at Walmart, and having staff put tissue in their ears—conduct spread over twenty months, none of it sexual or facially tied to a protected characteristic. Yelder v. Hegseth, 151 F.4th 943, 955–56 (8th Cir. 2025). Here, by contrast, the comments were explicitly sexual, were directed at Plaintiff's body, and came from the supervisor who controlled her daily assignments; they were accompanied by differential treatment of Plaintiff relative to the white female drivers and escalating hostility after her complaint, and within weeks of the second comment Plaintiff was discharged. Viewed in the light most favorable to Plaintiff, and in their totality rather than in isolation, these facts present a question for the jury.

## C.      The facts in the record are sufficient to support Plaintiff's claims of retaliation.

Plaintiff's evidence is sufficient to raise an inference that she was fired in retaliation for raising concerns regarding the workplace hostility and harassment she experienced at Defendant's worksite, and likewise that Defendant's stated reasons for a nonretaliatory motive are mere pretext.

### 1.       <u>Legal Standard: Retaliation</u>

Title VII's antiretaliation provision "forbids an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice'

made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (alteration in original) (citing 42 U.S.C. § 2000e-3(a)). "To establish a *prima facie* case of retaliation, an employee-plaintiff must show that '(1) she engaged in protected conduct, (2) she suffered a materially adverse employment act, and (3) the adverse act was causally linked to the protected conduct.'" *Covey*, 2022 WL 1750627, at *6 (quoting *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1069 (8th Cir. 2017)).

When a plaintiff relies on indirect evidence to establish a *prima facie* case of retaliation, the Court again applies the *McDonnell Douglas* burden-shifting framework. *Id*. (citing *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015)). Once the employee establishes a *prima facie* case of retaliation, the employer must articulate a legitimate, nonretaliatory reason for the termination. *Id*. (quoting *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011)). If the employer is able to do so, the employee must once again produce evidence that these reasons are mere pretext. *Id*. (quoting *Pye*, 641 F.3d at 1021).

Defendant asserts, without analysis, that it "disputes that Ms. Robinson engaged in protected conduct." On this record, that element cannot be resolved against Plaintiff at summary judgment. On June 12, 2023, Plaintiff texted Mr. Meyer, spoke with him by telephone that evening, and complained about Mr. Babbitt's treatment of her; she also told Mr. Meyer that Mr. Parker "had made a comment that I found offensive"—a reference to Mr. Parker's comment about Plaintiff's leggings, see Dep. Robinson 65:10–17—to which Mr. Meyer responded, "we will talk about it," though he never did. Dep. Robinson 43:16–25, 64:19–65:9; see Doc. 1, ¶ 26 (pleading Plaintiff's report of Mr. Parker's

comment to Mr. Meyer). Plaintiff's verified EEOC charge likewise states that her June 12 complaint to the owner was "regarding sex and race discrimination." Ex. 4. Protected opposition does not require legal precision; it requires a good-faith, objectively reasonable belief that the conduct opposed is unlawful. Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1195 (8th Cir. 2001). At minimum, the content of the June 12 complaint is genuinely disputed: Defendant denies that Mr. Meyer was ever informed of Mr. Parker's conduct, RFA No. 7, while Plaintiff testified under oath that she told him directly. Dep. Robinson 64:19–65:9. That credibility contest belongs to the jury. And context supplies the meaning: the only comments by Mr. Parker that Plaintiff had found offensive were the two sexual comments, Dep. Robinson 51:9–54:9, 65:10–17, so a jury could readily find that her complaint communicated opposition to them. Nor is this a case of an employee complaining about a facially neutral employment practice—pay, a title, a schedule— without connecting it to discrimination: the conduct Plaintiff opposed was itself sexual, and the only question is what she communicated about it, which on this record is for the jury.

2. <u>Plaintiff has produced evidence sufficient to give rise to an inference of retaliation.</u>

As established above, Mr. Babbitt was inordinately rude to Plaintiff while being kind and solicitous to Defendant's white female workers. Dep. Robinson 43:3–44:12, 47:18–24, 61:2–15, 63:3–64:3. Plaintiff complained about this behavior to Mr. Meyer on June 12 and was told that Mr. Babbitt would be instructed to be professional and respectful. *Id*. at 60:6–23. Mr. Babbitt's behavior did not change, and in fact got worse. *Id*. at 64:7–16. Following Plaintiff's report, Defendant's employees began to "nitpick" at Plaintiff, finding

various reasons to make her job more difficult or to make her look incompetent. *Id*. at 84:4–85:20. On July 19, Defendant hired Vic Norman, who had previously worked for Defendant and was qualified to drive Plaintiff's dump truck as well as Defendant's water truck. Decl. Meyer ¶¶ 13, 24; Ex. 1, Interrog. No. 9. On July 21, a mere two days after rehiring someone who could perform Plaintiff's job, Defendant fired Plaintiff. This sequence of events creates an inference that Defendant decided to fire Plaintiff when she made it known that she would raise complaints about how she was treated in the workplace, but waited to fire her until they could hire a suitable replacement.

The chronology, combined with the falsity of Defendant's stated reason, supports causation. Mr. Meyer concedes that he made the termination decision in mid-July 2023—roughly a month after Plaintiff's complaint—and that "[t]here were no other issues with Ms. Robinson" in the intervening weeks, meaning nothing about Plaintiff's performance changed between her complaint and her discharge. Decl. Meyer ¶¶ 21–22. In Wallace, 442 F.3d at 1115–16, 1121–22, the Eighth Circuit reversed summary judgment on a retaliation claim where the employer invoked a downturn in business and the plaintiff's junior status to justify terminating—shortly after her harassment complaint—the only employee in her region terminated in the purported downsizing. The same result follows here, where the "downsizing" eliminated one driver two days after Defendant rehired another, and the decisionmaker's stated rationale (that Plaintiff was the newest driver) was demonstrably false. Reeves, 530 U.S. at 147.

This evidence is sufficient to establish a *prima facie* case for retaliation. Defendant's argument that its "legitimate" reasons for terminating her employment sever any causal nexus fails for the same reasons that its "legitimate" reasons for termination

fail. Defendant's stated reasons for Plaintiff's termination are pretext, as are its arguments that the termination was not retaliation for Plaintiff's raising of concerns regarding a hostile workplace.

**D.     The facts in the record are sufficient to support Plaintiff's Equal Pay Act claim.**

Plaintiff's evidence is sufficient to demonstrate that she was paid less than a similarly-situated male employee, and likewise that Defendant's stated nondiscriminatory reasons for the disparity are invalid.

1.     Legal Standard: Equal Pay Act

Under the Equal Pay Act (EPA), an employee must establish a prima facie case by "show[ing] that the defendant paid male workers more than she was paid for equal work in jobs that required equal skill, effort, and responsibility and work performed under similar conditions." *Wilson v. Arkansas Dept. of Human Services*, No. 4:22-CV-00775-LPR, 2025 WL 1970239, at *6 (E.D. Ark. July 16, 2025) (quoting *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003)). Jobs need not be identical, or even have the same classification or title, to be considered equal work, but they must be at least "substantially equal." *Id*. (citing *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002)). To determine whether a male employee actually performed equal work to Plaintiff, the Court must consider the following: "(1) the respective 'experience, training, education, and ability' of [Plaintiff] and the male comparator; (2) the 'physical or mental exertion needed to perform the [respective] job[s],' and (3) the 'degree of accountability required in performing [each] job.'" *Id*. (quoting *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 718–19 (8th Cir. 2000)).

After the employee establishes this *prima facie* case, the burden shifts to the employer to prove one of the affirmative defenses set forth in the EPA—that the pay differential is attributable to: (1) a seniority system; (2) a merit system; (3) a system where earnings are tied to quality or quantity produced; or (4) "a differential based on any other factor other than sex." *Id*. (quoting 29 U.S.C. § 206(d)(1)). Importantly, unlike the equivalent analysis for Title VII claims in which the employer need only articulate a legitimate nondiscriminatory reason, "[t]o prevail at the summary judgment stage, a defendant relying on one of these statutory defenses must establish the defense as a matter of law such that no reasonable jury could conclude otherwise." *Id*. (citing *Tenkku v. Normandy Bank*, 348 F.3d 737, 741 (8th Cir. 2003)).

2.    <u>Plaintiff has produced evidence sufficient to prove her EPA claim.</u>

Defendant's own admissions supply the building blocks of the prima facie case. In response to Plaintiff's Requests for Admission, Defendant admitted that Plaintiff "performed substantially equal work to at least one male truck driver in terms of skill, effort, responsibility, and working conditions," that Plaintiff was "paid less per hour than at least one male employee who held the position of truck driver during her employment," and that "one or more male truck drivers employed by Defendant during the same period as Plaintiff earned $21.00 per hour or more." RFA Nos. 1, 3–4, attached as Ex. 2. A matter admitted under Rule 36 "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Defendant has filed no such motion. Its argument that "Plaintiff has failed to put forth a single male employee paid more for equal work" cannot be squared with its own admissions, and the qualifying commentary appended to those admissions—that Plaintiff's pay "met or exceeded male

employees with the same or similar experience, qualifications, responsibilities, and tenure"—is argument going only to Defendant's affirmative defenses, on which Defendant bears the burden of proof. Taylor v. White, 321 F.3d 710, 715–16 (8th Cir. 2003). And to the extent Defendant contends that its admissions describe different men—that the admitted equal-work comparator and the admitted higher-paid driver are not the same person—the record supplies the link: Mr. Cox was hired eleven days after Plaintiff at $21.00 per hour and, throughout Plaintiff's employment, performed the same material-hauling work that she performed. Ex. 1, Interrog. No. 9; Dep. Robinson 90:22–92:5; Dep. Ex. 9.

Throughout Plaintiff's employment, she was paid $18.50 per hour for driving one of Defendant's dump trucks. Dep. Robinson 39:1–16. Quindon Cox, who also drove dump trucks for Defendant and was hired shortly after Plaintiff, was paid $21.00 per hour. *See* Ex. 1, Interrog. No. 9 (Mr. Cox hired May 30, 2023, at $21.00 per hour). Defendant maintains that this disparity was due to Mr. Cox's qualification to drive low-boy trailers that could haul equipment, but Defendant never asked Mr. Cox to use this skill during Plaintiff's tenure with Defendant. *See* Dep. Robinson 91:1–9, 92:2–5; Dep. Ex. 9. Mr. Cox exclusively drove dump trucks, exactly like Plaintiff, throughout Plaintiff's employment. *Id*. When, after Plaintiff was fired, Defendant asked Mr. Cox to haul equipment, Mr. Cox quit his position because he did not believe that his $21.00 per hour was intended to cover the additional work, demonstrating that the $21.00 per hour rate was intended to cover his work driving dump trucks. *Id*. Accordingly, because a similarly-situated male employee was paid a higher rate than Plaintiff for the same work under the same circumstances,

Plaintiff has provided sufficient evidence to defeat summary judgment as to her EPA claim.

Because the prima facie showing rests on Defendant's own admissions and records, Defendant can prevail at this stage only by establishing one of the EPA's enumerated defenses "as a matter of law such that no reasonable jury could conclude otherwise." Wilson, 2025 WL 1970239, at *6 (citing Tenkku, 348 F.3d at 741). It cannot. A seniority system is out: Mr. Cox was hired eleven days after Plaintiff. Ex. 1, Interrog. No. 9. A merit system is out: Mr. Cox earned $21.00 from his date of hire, before he had performed any work for Defendant at all, and Defendant admits it employed no written pay policies. Id.; Ex. 1, Interrog. No. 11. And the "factor other than sex" Defendant offers—equipment-hauling qualifications—is genuinely disputed: Mr. Cox performed the same work as Plaintiff for the duration of her employment, Defendant paid its other low-boy driver, Othello Page, two dollars less than Mr. Cox, and when Mr. Cox was finally asked to haul equipment, Defendant refused him a raise and he quit. Dep. Robinson 91:7–9, 113:8–115:5; Ex. 1, Interrog. No. 9. On this record, a reasonable jury could find that what set pay at JARE was the work each driver actually performed—not titles or paper qualifications—and that the qualification Defendant now invokes was not what the $2.50 differential paid for.

## V.      CONCLUSION

Plaintiff has shown a *prima facie* case of Title VII discrimination and retaliation, presented a triable hostile work environment claim, and likewise demonstrated that Defendant's "legitimate" reasons for termination were mere pretext. As shown above, a reasonable jury could determine that Defendant violated Title VII by terminating Plaintiff's

employment because of her sex. Moreover, Plaintiff has met her burden to support her EPA claims by showing that a similarly-situated male employee was paid more than her during her employment—and Defendant's Rule 36 admissions conclusively establish both that Plaintiff was paid less than at least one male truck driver and that she performed substantially equal work to at least one male truck driver—and the evidence concerning Mr. Cox permits the finding that the higher-paid driver and the equal-work driver were the same man. Therefore, because genuine issues of material fact remain, Defendant is not entitled to summary judgment.

Respectfully submitted,

**PLAINTIFF PHATIFFINIA ROBINSON**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

Sean Short
Ark. Bar No. 2015079
sean@sanfordlawfirm.com