

**BARBERLAWFIRM**

**ATTORNEYS AT LAW**

**LITTLE ROCK · BENTONVILLE**
Suite 3400
425 West Capitol Avenue
Little Rock, Arkansas  72201

P 501.372.6175
F 501.375.2802

www.barberlawfirm.com

JAMES D. ROBERTSON
Direct 501.707-6128
jrobertson@barberlawfirm.com

February 15, 2024

Ms. Lynda Fier
EEOC
820 Louisiana, Ste 200
Little Rock, AR  72201

*Re:    Phatiffinia Robinson v. James A. Rogers Excavating, Inc.;
         EEOC Charge No.:  493-2023-02341*

Dear Ms. Fier:

Please allow this letter to serve as the Position Statement for James A. Rogers Excavating, Inc. ("JARE") in the above captioned matter.

### FACTUAL BACKGROUND:

Ms. Robinson was hired as a driver on May 15, 2023.  Her last day worked was July 21, 2023. Her rate of pay was $18.50 per hour.

(a) Ms. Robinson alleges that on June 12, 2023, she filed a complaint with the owner regarding sex and race discrimination.

**Response**:  The exchange between Ms. Robinson and Chris Meyer was initiated via text.  The incident involved the superintendent reprimanding Ms. Robinson for not doing her job; namely, Ms. Robinson dumped her load in the wrong location at a jobsite.  Ms. Robinson reported that the superintendent was rude and talked down to her for the error.  There was no mention of misconduct based on race or sex.  Nevertheless, Chris Meyer counseled the superintendent, David Babbitt, to be more courteous and to better control his frustration when counseling or disciplining employees for mistakes.  Ms. Robinson never reported any other perceived misconduct to Mr. Meyer; to be specific, Robinson never reported any misconduct based on race or gender.

(b)  Ms. Robinson alleges that in mid-July, 2023, Ms. Robinson was subjected to sexual harassment. The allegations in the

Ms. Lynda Fier
February 15, 2024
Page 2

_____

charge form are disjointed, but it appears that Ms. Robinson is identifying two comments to support this allegation: the truck boss, Adam Parker, allegedly said Robinson's "ass could be seen from a mile away."  Ms. Robinson also claims that Mr. Parker said, if Robinson "'showed my titties' the loader would be nice to me."

**Response**:  Mr. Parker has been interviewed, and he denies making the statements. However, Mr. Parker described multiple events requiring counseling to Ms. Robinson, and it is possible that Ms. Robinson is taking issue with one or more of these events, which include:

On May 25, 2023, Ms. Robinson struck a gate with her truck and failed to report it per company policy.  Robinson was confronted about the damage and admitted that she had hit the gate.  It was clear that she did not intend to report it.  Robinson was reminded of the company policy to report accidents and damage.

On May 30, 2023, Mr. Parker received three calls throughout the day that Ms. Robinson was driving too fast through the job site and not paying attention to site operators.  Her actions resulted in incomplete loads and also contributed to unwanted dust at the worksite.  (Dust control is a significant issue due to the workers on open-station equipment and on the ground having to endure the dust created when trucks and equipment travel too fast through the job site).  Robinson was again counseled at the end of the day.

Next, on June 12, 2023, Mr. Parker was contacted by a pit operator that the driver of DT-02 (Robinson) was driving too fast through the site.  The pit operator reported that he tried to communicate with Robinson to slow down for dust control, and the pit operator claimed that Robinson gave him "attitude" in response to his instruction.  After receiving the pit operator's complaint, Mr. Parker instructed Ms. Robinson to make sure she did not exceed 10 mph at the pit for dust control purposes.

(c) Ms. Robinson contends that on July 21, 2023, she was told she was discharged because they were cutting workloads back and Robinson was the newest employee.

**Response**: In mid-July of 2023, Mr. Meyer observed that the workload was thinning and that replacement contracts were lacking. Mr. Meyer was assessing the best combination to optimize efficiency within the company due to the slowdown that had started.  Ms. Robinson was the newest employee who drove only a dump truck.  In the same time frame, Mr. Meyer had also re-hired a previous employee to drive a tanker.  However, driving a tanker required extra certifications that Ms. Robinson did not have.  The tanker driver's higher certifications, more experience, and longer tenure as a whole, coupled

Ms. Lynda Fier
February 15, 2024
Page 3

_____

with the performance issues experienced by Ms. Robinson, motivated Chris Meyer to lay off Ms. Robinson first.  Mr. Meyer instructed Adam Parker to notify Ms. Robinson of his decision, and that conversation occurred on July 21, 2023.

Again, Mr. Meyer was never told about sexual harassment, racial issues, or gender issues.  Mr. Meyer was never told about the alleged comment that Robinson's "ass could be seen from a mile away," nor was he advised of Ms. Robinson's claim that she was told a pit operator would be nicer if she showed her breasts.  Hence, the alleged misconduct played no role in the termination decision, and Ms. Robinson's failure to report the misconduct is an indicator that it did not rise to the level such that the claimed misconduct affected a term or condition of employment.  Finally, JARE employs a total of 8 full-time dump truck drivers.  Of those, three are female, which is uncommon in JARE's industry.  Also, of the 8 full-time truck drivers, four are black and four are white.  Mr. Meyer strives to keep a diverse and qualified work force, and the demographics of his full-time drivers reflect those efforts.

## RESPONDENT'S POSITION

JARE contends that it had legitimate, non-discriminatory reasons to terminate Ms. Robinson.  Mr. Chris Meyer was lawfully exercising his business judgement to manage his company and make down-sizing decisions based on objective data such as tenure, experience, certifications, and performance.  See, e.g., Davis v. Minneapolis Pub. Sch., 2011 U.S. Dist. LEXIS 142214 (D. Minn)(alleged instances of sexual harassment did not rise to the level of severe or pervasive conduct necessary to establish a sexually hostile work environment claim); Clark v. Principi, 200 F. Supp 2d 1109 (E.D. Mo. 2002); Ahmed v. American Red Cross, 218 F.3d 932 8th Cir. 2000); Torre v. Northrop Grumman Sys. Corp., 2017 U.S. App. LEXIS 17569.  Next, there are insufficient facts alleged to support a hostile work environment claim because the isolated comments were neither severe nor pervasive and at most amounted to stray remarks that cannot sustain a cause of action for a hostile work environment.  See, e.g., Anderson v. Baptist Medcare, Inc., 2021 U.S. Dist. LEXIS 135541; Ray v. Weyerhaeuser, 17 F. Supp 2d 867 (W.D. Ark. 1998); Cronquist v. City of Minneapolis, 237 F.3d 920 (8th Cir. 2001).

With respect to the retaliation claim, Robinson must show (1) she engaged in protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct.  Musolf v. J.C. Penney Co., 773 F.3d 916 (8th Cir. 2014).  Moreover, Ms. Robinson must prove that her protected activity was a but-for cause of the alleged adverse action by the employer.  Id.  JARE disputes that Ms. Robinson engaged in protected conduct, but even if she had, Ms. Robinson cannot overcome the legitimate, nondiscriminatory reasons for the termination.  As a result, her charge should be dismissed.

Ms. Lynda Fier
February 15, 2024
Page 4

_____

Sincerely,

BARBER LAW FIRM PLLC

James D. Robertson
Attorney

JDR/cw