IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**PHATIFFINIA ROBINSON**                                                    **PLAINTIFF**

vs.                                        No. 4:24-CV-852-DPM

**JAMES A. ROGERS EXCAVATING, INC.**                        **DEFENDANT**

## RESPONSE TO DEFENDANT'S
## STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Phatiffinia Robinson ("Plaintiff"), by and through her undersigned attorneys of Sanford Law Firm, PLLC, and for her Response to Defendant's Statement of Undisputed Material Facts, states and alleges as follows:

1.      Plaintiff Phatiffinia Robinson began working as a dump truck driver for JARE sometime in May 2023, at an agreed upon rate of $18.50 per hour. [Doc. 1, ¶ 17, 22].

**RESPONSE:** Admitted.

2.      At the time of her hiring, Plaintiff possessed a valid CDL license but had less experience as a professional driver, and Plaintiff's CDL restricted her to only driving automatic transmission vehicles. (Exhibit 1, Deposition Testimony of Plaintiff, p. 29).

**RESPONSE:** Admitted that Plaintiff held a valid CDL that restricted her to driving automatic-transmission vehicles. Denied as to the vague, comparative assertion that Plaintiff "had less experience as a professional driver." Plaintiff had prior commercial driving experience as an over-the-road tractor-trailer driver for USA

Truck and as a dump truck driver for Redstone before Defendant hired her. Dep. of Phatiffinia Robinson ("Dep. Robinson"), ECF No. 13-1, at 29:22–33:24; see also id. at 35:20–21 (confirming the automatic-transmission restriction).

3.      Plaintiff's job responsibilities consisted of picking up materials from various quarries and hauling them back to various job sites. (Exhibit 1, p. 33).

**RESPONSE:**  Admitted.

4.      Plaintiff never drove anything other than a dump truck during her employment with JARE. (Exhibit 1, p. 91).

**RESPONSE:** Admitted.

5.      The majority of JARE's equipment contains manual transmissions, meaning Plaintiff was not qualified to drive it. However, JARE did have an automatic transmission dump truck available for Plaintiff's use. (Exhibit 2, Declaration of Chris Meyer ¶ 4).

**RESPONSE:** Objection. Plaintiff lacks the requisite knowledge to deny or admit this statement. Subject to the objection, Plaintiff admits that she was assigned to one of Defendant's dump trucks and did not drive any other truck or equipment during her employment with Defendant.

6.      Driver pay is adjusted based on performance, tenure, and responsibilities. For example, employees who haul materials as well as job site equipment or more hazardous vehicles like water tanker trucks often have higher rates of pay. (Exhibit 2, ¶ 10).

**RESPONSE:** Denied. Defendant undoubtedly purports to impose such a pay scheme, but the reality during Plaintiff's employment was that she was paid less than her male counterparts. Specifically, Plaintiff was paid less than Quindon Cox. Mr. Cox was

hired after Plaintiff and thus cannot be said to have seniority or tenure. Dep. Robinson 39:1–16, 90:22–91:9; Def.'s Resp. to Pl.'s Interrog. No. 9 (Mr. Cox hired May 30, 2023, at $21.00 per hour). While ostensibly qualified to haul equipment, Mr. Cox only ever drove a dump truck during Plaintiff's employment. Id. at 91:16–92:5, 114:23–115:5. In fact, when Defendant eventually asked Mr. Cox to begin hauling equipment, Mr. Cox quit his position with Defendant because Defendant did not increase his pay commensurate with his new responsibilities. Dep. Robinson 92:2–5, 113:8–115:5 & Dep. Ex. 9. Defendant's own interrogatory answers likewise show that Bryan Morris, another male driver hired January 9, 2023, was paid $19.25 per hour, and that Othello Page, whom Defendant identifies as a "low boy driver," was paid $19.00 per hour—two dollars less than Mr. Cox. Def.'s Resp. to Pl.'s Interrog. No. 9.

7.      Hauling equipment as opposed to just materials involves different and increased risks. Drivers who operate tanker trucks require an elevated skill and experience level due to the dangers involved with load shift, which is inherent when hauling fluid, and those responsibilities are generally given to more experienced drivers. (Exhibit 2, ¶ 6).

**RESPONSE:** Admitted.

8.      At the time of Ms. Robinson's employment, JARE had two drivers assigned to the low-boy tractor trailers used to haul heavy equipment. One was Adam Parker, whose title was "Truck Boss," and the other was Quindon Cox. The two low-boy rigs haul more weight, and each rig uses a manual transmission. (Exhibit 2, ¶ 7).

 **RESPONSE:** Admitted in part. Admitted to the extent that Mr. Parker and Mr. Cox were qualified to drive low-boy tractor trailers used to haul heavy equipment, but denied

as to any implication that Mr. Cox's pay rate was tied to this qualification. Denied further that only two drivers were assigned to the low-boy tractor trailers: Defendant's own interrogatory answers identify Othello Page as a third "low boy driver," hired February 15, 2023, at $19.00 per hour. Def.'s Resp. to Pl.'s Interrog. No. 9. Mr. Cox did not drive a low-boy tractor trailer during Plaintiff's tenure with Defendant, and in fact only ever drove dump trucks exactly like Plaintiff. Dep. Robinson 91:16–92:5, 114:23–115:5. When Defendant eventually asked Mr. Cox to haul equipment, Mr. Cox quit his position due to Defendant's failure to increase his pay in line with the new responsibilities. Dep. Robinson 92:2–5; Dep. Ex. 9.

9.      During the time frame of Robinson's employment, JARE employed three other female dump truck drivers and four male dump truck drivers. (Exhibit 1, p. 20, Exhibit 2, ¶ 11).

**RESPONSE:** Admitted. Plaintiff was Defendant's only employee who was both black and female. Dep. Robinson 79:18–81:5.

10.     Quindon Cox, a black male, made $21.00 per hour while Plaintiff was employed at JARE. However, Mr. Cox was one of two equipment haulers. Mr. Cox was qualified to operate trucks equipped with manual transmissions. (Exhibit 1, p. 93, Exhibit 2, ¶ 12).

**RESPONSE:** Admitted in part. Plaintiff admits that Mr. Cox was technically qualified to haul equipment, but denies any implication that his pay rate was based on this qualification. Mr. Cox did not haul equipment while Plaintiff was employed by Defendant, but instead performed the exact same duties as Plaintiff. Dep. Robinson 91:16–92:5, 114:23–115:5. When Defendant eventually asked Mr. Cox to haul

equipment, he quit his position because his pay did not align with his new responsibilities. Dep. Robinson 92:2–5; Dep. Ex. 9.

11.    The other equipment hauler, Adam Parker, made $22.50 per hour at the time. Adam was more tenured and also served as the truck boss. Mr. Parker was qualified to operate trucks equipped with manual transmissions. (Exhibit 2, ¶ 12).

**RESPONSE:** Admitted.

12.    Vic Norman, a black male, was re-hired by JARE for his second stint at the company during Plaintiff's tenure with JARE. His primary job was to operate the water truck, and his hourly rate was $19.25. Mr. Norman could operate a dump truck when not operating the water truck. Mr. Norman was qualified to operate trucks equipped with manual transmissions. (Exhibit 1, p. 86, Exhibit 2, p. 13).

**RESPONSE:** Admitted as to Mr. Norman's rate of pay and qualifications. Further answering, Defendant's interrogatory answers state that Mr. Norman was rehired on July 19, 2023—two days before Defendant terminated Plaintiff—while Mr. Meyer's declaration describes the rehire as "a week or so before the decision to lay off Ms. Robinson." Def.'s Resp. to Pl.'s Interrog. No. 9; Decl. Meyer ¶ 13.

13.    Brandon Shelton, a male who started with JARE in July 2022, maintained a constant rate of pay of $18.25 an hour—25 cents lower than Plaintiff was paid—until his separation in July 2023. (Exhibit 2, ¶ 10).

**RESPONSE:** Objection. Plaintiff lacks the requisite knowledge to admit or deny this statement. Subject to the objection, admitted. Further answering, Defendant's interrogatory answers state that Mr. Shelton separated from the company on July 11, 2023—ten days before Plaintiff was terminated in Defendant's purported downsizing—

and Mr. Meyer describes Mr. Shelton's $18.25 rate as "the new hire rate for more inexperienced drivers at that time in 2022." Def.'s Resp. to Pl.'s Interrog. No. 9; Decl. Meyer ¶ 10.

14.    Adam Parker was Ms. Robinson's direct supervisor. He was the first line of supervision over the drivers. (Exhibit 1, p. 41; Exhibit 2, ¶ 8).

**RESPONSE:** Admitted.

15.    Mr. David Babbitt was the superintendent of the work sites; Mr. Babbitt would interact with drivers at the work sites and may direct where the drivers are to drop their loads.  Mr. Babbitt was also responsible for the workflow at the job sites, and drivers are expected to follow his instructions while on the job sites.  (Exhibit 1, p. 43; Exhibit 2, ¶ 8).

**RESPONSE:** Admitted.

16.    Sometime in May or early June, Plaintiff claims that in a conversation about yellow safety-colored leggings, Adam Parker stated, "We'll see your ass from a mile away." [Doc. 1, ¶ 27]; (Exhibit 1, p. 52).

**RESPONSE:** Admitted.

17.    Plaintiff testified that after this comment was made, she simply walked off and got into her truck to start her duties for the day. (Exhibit 1, pp. 52-53).

**RESPONSE:** Admitted.

18.    In early July, Plaintiff claims that she and Adam Parker were discussing an older, "grumpy" employee who worked as a loader.  Plaintiff described the conversation in her deposition: "Adam said, yes, you show him your boobs, he'll be fine.  He said, if I

show him mine, he'll probably kick my ass, but if you show him yours, he'll be nice to you." (Exhibit 1, p. 54).

**RESPONSE:** Admitted.

19.    Plaintiff testified that she once again walked away from the conversation after that comment was made. (Exhibit 1, p. 56).

**RESPONSE:** Admitted.

20.    On May 25, 2023, just days after Plaintiff started with JARE, she hit a gate, causing minor damage to the dump truck that she was driving and gate. (Exhibit 1, p. 108; Exhibit 2, ¶ 15)

**RESPONSE:** Admitted.

21.    Plaintiff failed to immediately report this incident, despite clear company policy directing her to do so. (Exhibit 2, ¶ 15).

**RESPONSE:** Denied. Plaintiff immediately reported the incident to Mr. Parker. Dep. Robinson 108:19–109:2. Mr. Parker looked at the truck, noted that there was no damage, and informed Plaintiff not to worry about it. *Id*. Plaintiff was not chastised or written up following the incident. *Id*.

22.    Plaintiff was counseled by management regarding her failure to follow company policy. (Exhibit 1, p. 108; Exhibit 2, ¶ 15).

**RESPONSE:** Objection. The portion of Plaintiff's deposition upon which this statement relies does not support the statement. In fact, this portion of Plaintiff's deposition specifically states that she was *not* counseled by management regarding failure to follow company policy: "I wasn't written up, I wasn't chastised." Dep. Robinson 108:23–24. Accordingly, subject to the objection, denied.

23.     On May 30, 2026, JARE management received three separate phone calls reporting that Plaintiff was driving too fast through a job site and not paying attention to site operators. (Exhibit 2, ¶ 16)

**RESPONSE:** Objection. (Plaintiff notes that the statement refers to "May 30, 2026"; Plaintiff assumes Defendant intends May 30, 2023—which Defendant's own records identify as the date it hired Mr. Cox. Def.'s Resp. to Pl.'s Interrog. No. 9.) Plaintiff lacks the requisite knowledge to admit or deny this statement. While Plaintiff knew that a "grumpy" loader (the same loader to whom Mr. Parker suggested Plaintiff reveal her breasts to curry favor) had complained about Plaintiff "and other drivers" kicking up dust at work sites, Plaintiff was unaware that this issue was attributed specifically to her because she was never written up, chastised, or counseled regarding the accusation. Dep. Robinson 54:21–55:2. Accordingly, subject to the objection, denied.

24.     Her actions on May 30, 2026, resulted in incomplete loads and contributed to a higher concentration of unwanted dust on the worksite, which presents a significant issue for other workers on open-station equipment and on the ground. (Exhibit 2, ¶ 16).

**RESPONSE:** Plaintiff incorporates her response to Statement No. 23 herein.

25.     On June 12, 2023, JARE management was once again contacted by a pit operator regarding Plaintiff's excessive speed on a job site and her bad attitude in response to instructions to slow down. (Exhibit 2, ¶ 17).

**RESPONSE:** Plaintiff incorporates her response to Statement No. 23 herein.

26.     On June 12, 2023, Plaintiff requested to have a conversation with JARE owner, Chris Meyer. In a telephone conversation that evening, Plaintiff complained of a "rude" interaction with JARE superintendent, David Babbitt. Plaintiff stated that Babbitt

had yelled at her to roll her window down on one occasion. (Exhibit 1, p. 43; Exhibit 2, ¶ 18).

**RESPONSE:** Admitted.

27.    Meyer told Plaintiff that her complaint would be addressed with Mr. Babbitt, and Meyer did so. Mr. Babbitt was counseled to communicate professionally with employees even if he was frustrated with the employee's mistakes. (Exhibit 1, p. 60; Exhibit 2, ¶ 19).

**RESPONSE:** Objection. Plaintiff lacks the requisite knowledge to admit or deny Mr. Meyer's actions as to Mr. Babbitt. Following Plaintiff's complaint to Mr. Meyer, Plaintiff and the other drivers were instructed to roll their windows down completely, but Mr. Babbitt's behavior to Plaintiff did not change. Dep. Robinson 44:20–45:7, 64:7–16 (describing the manner in which Mr. Babbitt instructed others to tell Plaintiff to "take her ass to the yard" so "Adam can handle her" on the day she was terminated). Accordingly, subject to the objection, denied.

28.    By mid-July 2023, Meyer observed that the workload was thinning and that JARE lacked replacement contracts. (Exhibit 2, ¶ 21).

**RESPONSE:** Objection, Plaintiff lacks the requisite knowledge to admit or deny this statement. Subject to the objection, denied. Defendant rehired Vic Norman on July 19, 2023, and Brandon Shelton had already separated on July 11, 2023. A jury could find that no genuine workload-driven downsizing occurred where Defendant added a driver two days before terminating Plaintiff and moved that driver into Plaintiff's truck within a week or two of her termination. Def.'s Resp. to Pl.'s Interrog. No. 9; Dep. Robinson 86:1–17, 88:1–14.

29.     In response, Meyer made the decision to downsize his workforce to optimize efficiency within the company. Mr. Meyer had to assess the available drivers to determine who should be laid off. (Exhibit 2, ¶ 21).

**RESPONSE:** Objection, Plaintiff lacks the requisite knowledge to admit or deny this statement. Subject to the objection, denied. Plaintiff incorporates her response to Statement No. 28 herein. The only driver laid off in Defendant's purported downsizing was Plaintiff.

30.     Because Plaintiff was one of the newest hires with less experience, limited qualifications, and had generated several complaints within the short span of her employment, Meyer made the decision to terminate Plaintiff's employment, effective July 21, 2023. (Exhibit 2, ¶ 22).

**RESPONSE:** Denied. Plaintiff was not the newest hire because both Mr. Cox and Mr. Norman were hired after her. Def.'s Resp. to Pl.'s Interrog. No. 9 (Mr. Cox hired May 30, 2023; Mr. Norman rehired July 19, 2023). Defendant's other drivers had generated at least as many complaints as Plaintiff. Dep. Robinson 80:15–81:5. Plaintiff's qualifications were equal with several of Defendant's other drivers, and moreover, the drivers with more qualifications than Plaintiff were given the same responsibilities as Plaintiff rather than anything requiring use of those qualifications. Dep. Robinson 91:1–9. Accordingly, Defendant's reasoning for Plaintiff's termination is mere pretext: Plaintiff was fired because of her sex—and she was, tellingly, the only black woman on Defendant's staff.

31.     Vic Norman had higher responsibility of driving the water tanker truck, which is a critical function in the company, and which is more hazardous than operating a dump truck. Mr. Norman, in addition to being qualified to operate the tanker truck, was qualified

to operate both models of dump trucks (automatic and manual transmissions). (Exhibit 1, p. 86; Exhibit 2, ¶ 24).

**RESPONSE:** Objection, Plaintiff lacks the requisite knowledge to admit or deny this statement. Subject to the objection, admitted that Mr. Norman held the qualifications described. Further answering, Mr. Norman was rehired on July 19, 2023, two days before Plaintiff's termination. Def.'s Resp. to Pl.'s Interrog. No. 9.

32. These distinctions warranted Mr. Norman's slightly higher pay as well as justifying the decision to keep him over Ms. Robinson when deciding who to lay off. (Exhibit 2, ¶ 24).

**RESPONSE:** Denied. This statement is a conclusion and an opinion, not a statement of fact. Defendant did not choose to retain Mr. Norman "over" Plaintiff from among its existing drivers: Defendant rehired Mr. Norman on July 19, 2023—two days before it terminated Plaintiff—and placed him in Plaintiff's own truck within a week or two of her termination. Def.'s Resp. to Pl.'s Interrog. No. 9; Dep. Robinson 86:1–17, 88:1–14; Dep. Exs. 6–7.

33. Plaintiff testified that she saw Mr. Norman operating the dump truck that was assigned to her a "week or two" after her termination but that he had only ever driven the water truck prior to her termination. (Exhibit 1, p. 86, 89).

**RESPONSE:** Admitted. Further answering, Plaintiff photographed Mr. Norman driving the dump truck previously assigned to her within a week or two of her termination. Dep. Robinson 86:1–17, 88:1–89:14; Dep. Exs. 6–7.

34. Likewise, Quindon Cox was an experienced driver who often hauled equipment as well. In fact, only Mr. Cox and Mr. Parker were authorized to haul the heavy

equipment at the time, which is arguably the most hazardous driving job within the company. (Exhibit 2, ¶ 25).

**RESPONSE:** Admitted in part. Plaintiff admits that Mr. Cox was technically qualified to haul equipment, but he never did so during Plaintiff's employment with Defendant. Dep. Robinson 91:16–92:5, 114:23–115:5. It wasn't until after Plaintiff was fired that Defendant began requiring Mr. Cox to haul equipment, and Mr. Cox quit his position as a result because his pay did not rise commensurate with his new responsibilities. *Id. See also* Dep. Ex. 9.

35.     Plaintiff was laid off due to her short tenure with the company, her lackluster job performance, more limited responsibilities within the company as well as her more limited experience and qualifications overall, which limited her usefulness to the company. (Exhibit 1, p. 67; Exhibit 2, ¶ 26).

**RESPONSE:** Denied. Because Plaintiff never received a criticism of her work, was able to perform her job as capably as Defendant's other drivers, and was not Defendant's newest hire, Defendant's reasoning for firing Plaintiff is mere pretext: Plaintiff was fired because of her sex and in retaliation for her complaint; that she was the only black woman on Defendant's staff is part of the evidence of pretext. Dep. Robinson 67:5–25, 80:15–81:5, 108:21–24; Def.'s Resp. to Pl.'s Interrog. No. 9.

Respectfully submitted,

**PLAINTIFF PHATIFFINIA ROBINSON**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

Sean Short
Ark. Bar No. 2015079
sean@sanfordlawfirm.com